Norman F. DACEY, Plaintiff-Appellee,

v.

The FLORIDA BAR, INC., Boyd H. Anderson, Jr., et al., Defendants-Appellants.

No. 28218.

United States Court of Appeals, Fifth Circuit.

June 22, 1970.

Rehearing Denied July 7, 1970.

Herbert L. Nadeau, Wm. M. Hoeveler, Miami, Fla., for appellants.

Arthur J. Berk, Miami Beach, Fla., for appellee.

Before GODBOLD, DYER and MORGAN, Circuit Judges.

DYER, Circuit Judge:

The issues in this interlocutory appeal, which we granted under the provisions of 28 U.S.C.A. § 1292(b),[1] are framed by the order of the District Court in which, in addition to denying defendant Anderson's motion for summary judgment, certification was made that in this libel action a controlling question of law is involved: Whether the undisputed facts showed Dacey to be a public figure, and, if so, whether the protection of the libel laws are withdrawn from him absent a showing of actual malice under the standards laid down by the Supreme Court.

"How to Avoid Trouble" was just the beginning of trouble for lawyer-author Anderson. The publication of this article, in the March, 1967, issue of The Florida Bar Journal prompted this libel action by Dacey against Anderson. The article was basically a defense of the Florida probate system and a review of Dacey's book *How to Avoid Probate,* a book "which has stirred some flapping of wings in the legal aviary." Dacey v. Florida Bar, Inc., 5 Cir. 1969, 414 F.2d 195, 196. In his article Anderson wrote the following which Dacey alleges is libelous:

> Most lawyers, on the other hand, after reading a few pages of this best selling book *How to Avoid Probate* are ready to take up arms. Witness the Connecticut Bar, which became so incensed that it secured a conviction of unauthorized practice of law against the author, one Norman F. Dacey.

1. That section provides in part:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after entry of the order * * *.

In its opinion upholding this conviction, the Connecticut Supreme Court * * *.

The Connecticut proceeding referred to in the article was, in fact, an action brought by the Bar of Fairfield County, to restrain Dacey from engaging in the unauthorized practice of law. It did not charge Dacey with criminal conduct and there was, of course, no criminal conviction.[2]

Following the publication of the article Dacey wrote Anderson that Dacey had never been charged with or convicted of the unauthorized practice of law and requested an immediate undertaking from Anderson to cause a complete retraction of the offending statement to be published in the next issue of *The Florida Bar Journal*. A clarification of the nature of the Connecticut proceeding was printed in the next issue of the *Journal*.

Dacey then instituted the present action against Anderson and The Florida Bar, Inc. This Court affirmed the dismissal of The Florida Bar. Dacey v. Florida Bar, Inc., *supra*. In his amended complaint against Anderson, Dacey alleged that the article had been widely circulated and read by members of the Florida Bar and had been made available for reading by the general public; that it was libelous and that he was entitled to recover compensatory and punitive damages of one million five hundred thousand dollars because the language in the article was "intended to convey that Plaintiff was convicted of the crime of unauthorized practice of law and that he was a criminal * * *."

In his answer Anderson denied the material allegations of the complaint and, among other defenses, asserted a claim of privilege under the First and Fourteenth Amendments to the Constitution of the United States.

A substantial record was established by interrogatories which were propounded and answered, and by the depositions of Dacey and Anderson. It appears that Anderson is a lawyer in Broward County, Florida, having a substantial probate practice. His father was formerly a probate judge there. Anderson had previously written an unfavorable critique and newspaper article about Dacey, and was asked by the Florida Bar to write a review of Dacey's book. Anderson was admittedly upset with Dacey's treatment of lawyers and probate judges, and unhappy about the probable diminution of probate income to attorneys as a consequence of the acceptance of the ideas expressed in Dacey's book. Anderson had researched much of the subject matter of the article and had read source material but had not, prior to the publication of his article, read the report of the proceedings by the Connecticut Bar against Dacey to enjoin him from illegally engaging in the practice of law which culminated in a judgment in favor of the Bar and which was affirmed on appeal. By way of explanation, Anderson said he used the word "convicted" as meaning merely an adverse decision in a civil matter, that he did not intend to convey the idea that Dacey was convicted of any crime, and that he had "apologized to Mr. Dacey if it was considered he was convicted of a crime."

Dacey managed the first publication of his book in 1965 but because it became too involved for him he entered into a contract in 1966 with Crown Publishers to handle it. The book is in its thirty-second printing. Dacey receives a royalty of 75 cents per copy or 50 cents per copy on mail order sales. His income in 1964 was $15,900. In 1965, the first year of publication of the book (and when he was doing his own publishing), his income was $35,000. In 1966 his income was $292,960.00, and in 1967 he had an income of $232,570.00.

Dacey made at least two hundred television appearances to promote his book. He also spoke on radio, made personal appearances and wrote magazine articles.

2. Grievance Committee of the Bar of Fairfield County v. Dacey, 154 Conn. 129, 222 A.2d 339 (1966).

Through the media he criticized probate courts and lawyers specializing in the probating of estates and discussed the abuses that he had seen. In newspaper and magazine articles, he pointed out the fact that he had sued Anderson and other people because of the book. Admittedly, Dacey was considered a controversial person. He had an impression that there was a pattern of harassment and an attempt to discredit him and his book and that Anderson's criticism was a part of it.

On this record both parties moved for summary judgment. The District Court denied both motions and Anderson's interlocutory appeal ensued.

Our inquiry succinctly stated is: Do the established facts make Dacey a public figure and, if so, do the established facts make applicable the standards of actual malice or highly unreasonable conduct as laid down by the Supreme Court in New York Times Co. v. Sullivan, 1964, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, 95 A.L.R.2d 1412, and Curtis Publishing Co. v. Butts, 1969, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094.

In Time, Inc. v. McLaney, 5 Cir. 1969, 406 F.2d 565, cert. denied, 395 U.S. 922, 89 S.Ct. 1776, 23 L.Ed.2d 239, we agreed with the Ninth Circuit's view expressed in United Medical Laboratories, Inc. v. Columbia Broadcasting System, Inc., 1968, 404 F.2d 706, cert. denied, 394 U.S. 921, 89 S.Ct. 1197, 22 L.Ed.2d 454, that when matters of great public interest are involved "[t]he standard of New York Times was not to be regarded as having had 'its outer limits * * * marked out' so as not to be open to further definition." We concluded that the First Amendment privilege extends to discussions of specific individuals, not associated with any government, if those individuals are involved in matters of important public concern. *Id.* at 573; Bon Air Hotel, Inc. v. Time, Inc. and Dan Jenkins, 5 Cir. 1970, 426 F.2d 858. See also Pauling v. Globe-Democrat Publishing Company, 8 Cir. 1966, 362 F.2d 188, cert. denied, 388 U.S. 909, 87 S.Ct. 2097, 18 L.Ed.2d 1347.

■ It is clear that Dacey's book, his many radio, television, and personal appearances, and the magazine and newspaper articles constituted "purposeful activity amounting to a thrusting of his personality into the 'vortex' of an important public controversy" which "commanded a substantial amount of independent public interest at the time of the publications." *Butts,* 388 U.S. at 154–155, 87 S.Ct. at 1991. Thus we hold that Dacey was a public figure.

We need not dwell long on the application of the established facts in this case to the standards of actual malice or highly unreasonable conduct enunciated in *Sullivan* and *Butts.* Dacey is prohibited "from recovering damages for a defamatory falsehood relating to his * * * conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Sullivan,* 376 U.S. at 279–280, 84 S.Ct. at 725–726. Actual malice is not presumed " 'but is a matter of proof by the plaintiff.' " *Id.* at 284, 84 S.Ct. at 728. The constitutional standard demands that the proof of actual malice be made with convincing clarity. *Id.* at 284, 84 S.Ct. at 710. "There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." St. Amant v. Thompson, 1968, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262.

■ There is no evidence that Anderson had any knowledge or suspicion of the falsity of the statement made by him, nor is there any proof that he had before him any indication that his conclusions were incorrect. His statement that Dacey was convicted was literally false but his article was true in stating that an action had been brought against Dacey for the unauthorized practice of law. Even assuming reportorial negligence this does not meet the definition of actual malice in *Sullivan.* There was no evidence of "highly unreasonable conduct" on Anderson's part "constituting an extreme departure from the stand-

ards of investigation and reporting ordinarily adhered to by responsible publishers." *Butts,* 388 U. S. at 155, 87 S.Ct. at 1991.

It follows that the defendant was entitled to a summary judgment because there are no issues of material facts in dispute and there is no evidence "which would permit a fact finder to conclude that the standard laid down by the Supreme Court had been met by the plaintiff." *McLaney,* 406 F.2d at 573.

Reversed and remanded with directions that a summary judgment for the defendant be entered.