Paul C. TATE, Jr.

v.

John Ed BRADLEY and Washington
Post Company.

Civ. A. No. 85–0570.

United States District Court,
W.D. Louisiana,
Lafayette Division.

Feb. 27, 1987.

Fruge & DeJean, Kenneth DeJean, Lafayette, La., for plaintiffs.

Caffery, Oubre, Dugas & Campbell, Patrick T. Caffery, New Iberia, La., and Williams & Connolly, Kevin T. Baine and Jeffrey B. Kindler, Washington, D.C., for defendants.

## RULING

### NAUMAN S. SCOTT, District Judge.

This matter is now before us on a Motion for Summary Judgment filed by defendants John Ed Bradley and the Washington Post Company.

Plaintiff, Paul C. Tate, Jr., brought this action for defamation based upon quotations which were attributed to him in an article entitled "Cajun Mardi Gras: The Native Returns for Raucous Rites," (the "article") which was published in the Washington Post on March 7, 1984. As the title implies, the article is a description of Mardi Gras festivities as celebrated in a "colorful Cajun atmosphere" at Church Point, Louisiana, and as observed by the writer, John Ed Bradley, a former resident of nearby Opelousas, Louisiana.

Since before March 1984, plaintiff has served as the President of the Mamou Mardi Gras Association and the Mamou Cajun Music Festival Association in Mamou, Louisiana. Plaintiff is also a practicing attorney and has served as a Town Alderman of Mamou since being elected in 1981. In addition, plaintiff has served as Secretary of the Evangeline Parish Gravity Drainage District No. 4 for approximately the past five years. During the summer of 1985, plaintiff was appointed by the Governor to a position on the Council for the Development of French in Louisiana (CODOFIL). CODOFIL is a subagency within the State Department of Education and its purpose is "to accomplish the development, utilization and preservation of the French language as found in the State of Louisiana for the cultural, economic and tourist benefit of the State." La.R.S.Ann. §§ 25:651–53 (1975); 36:651 (1985). Although at the time the article was published, plaintiff had not been appointed to CODOFIL, he had aspired to that position at that time, and has claimed that the article had a bearing upon whether or not he would receive that appointment. Dep.Tr. of Plaintiff, pp. 7–17.

Plaintiff considers himself, and is viewed by others, to be a leader of the movement for the preservation of the Cajun culture and heritage in Louisiana, and he has acted as a spokesman for that cause on various occasions. Dep.Tr. of Plaintiff, pp. 16–20. His efforts to promote the celebration of Mardi Gras and the Cajun culture in Louisiana have received attention from local media and press, as well as coverage in the March 4, 1985 issue of Time Magazine. As President of the Mamou Mardi Gras Association and the Mamou Cajun Music Festival Association, plaintiff "views it as an important part of [his] job to deal with the press and educate them on the missions of those two organizations and on what the Cajun culture is all about." Dep.Tr. of Plaintiff, p. 30.

> "[O]ne of the most sensitive positions of all [is] trying to get across to the *many, many press organizations and individuals and artists and writers and photographers, film photographers, cinematographers, video photographers,* whatever, to try to educate them as to what the culture is and why it has survived and why it's important that it continues to survive, because it's so easily distorted by people who are less sensitive to ethnic groups."

Dep.Tr. of Plaintiff, p. 29 (emphasis added). Plaintiff has also written various articles for local newspapers regarding his duties as Mamou Town Alderman.

Approximately one week before Mardi Gras, Bradley contacted the plaintiff, who he understood was in charge of the Mamou Mardi Gras, and discussed his desire to write an article about Cajun Mardi Gras. Based on their discussion, Bradley decided to attend the Mardi Gras celebration in Church Point, since it occurred before the Mamou celebration and Bradley wanted the extra time to prepare the article for publication the morning after Mardi Gras.[1] Affidavit of John Ed Bradley, ¶ 5; Dep.Tr. of Plaintiff, p. 36. Bradley then attended the

---

1. Plaintiff alleges in paragraph 3 of his Original Complaint that Bradley interviewed him during the Mamou Mardi Gras on or about March 6, 1984. The parties, however, agree that the interview actually took place in Church Point two days earlier on March 4, 1984. Dep.Tr. of Plaintiff, pp. 94–98; Telephone Interview with Kenneth DeJean and Patrick Caffery, Counsel for Parties (Jan. 7, 1987).

celebration in Church Point and was accompanied by Jerry Ward, a freelance photographer from Baton Rouge. At some point during the day, Bradley interviewed the plaintiff. This interview apparently became the basis for the following portion of the Post article written by Bradley:

"The gravel road cuts through a dried-out soybean field and a crawfish farm. The courir stops to eat links of boudin (red-hot Cajun sausage) and hard-boiled eggs. The native says it has been over 13 months since he's eaten boudin.

" 'People don't know what tastes good up dare, do dey?' says Paul Tate, Jr., whose father had helped found both Mamou's and Church Point's Official Courir de Mardi Gras almost 25 years ago.

"The native shakes his head no and asks for another beer.

"You get north of Shreveport and you lose the South," Tate says. 'All you got is Americans up dare. Well, I'm an American, but I'm a Cajun first. Americans look down on anyone who doesn't speak their own language. But you know what you can do, Coonass? You can just tell America that we're French and we're proud. Tell America a Coonass ain't nothing to be ashamed of. They ran our ancestors out of Acadia (Canada) for political reasons but we got a home here in Loozianne. So go back, you. And take your time. But tell'em we'll live here forever.'

"The courir cranks up again and passes rows of house trailers and shotgun shanties that sit like shipwrecks in the muddy fields...."

The plaintiff alleges in his complaint that when publishing the article, the defendants deliberately misquoted remarks he made during the conversation with Bradley and distorted the manner in which he spoke those remarks. Plaintiff alleges that these misrepresentations portray him as "an inarticulate, illiterate and confused person concerning the role of the French culture in Louisiana," and as a result, have caused him to suffer "an extreme amount of humiliation, embarrassment and damage to his professional and personal reputation."

Plaintiff's Original Complaint, ¶ 4–6. In addition, he alleges that the article has damaged "his reputation in the community [as] a strong promoter of the French culture." Plaintiff's Original Complaint, ¶ 7. The defendants argue that their Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure should be granted on the grounds that it is undisputed that (1) the quoted material in the article is accurate in substance and is not defamatory; (2) the language and spellings used in the article are not defamatory on their face and there is no evidence of common law malice; and (3) the plaintiff is both a public official and a public figure, and there is no evidence of constitutional malice within the rule of *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

■ In Louisiana in order to recover for defamation a plaintiff must prove: (1) Defamatory words; (2) Publication or communication to some person other than the one defamed; (3) Falsity; (4) Malice, actual or implied; and (5) Resulting injury. *Madison v. Bolton,* 234 La. 997, 102 So.2d 433 (1958); *Cashio v. Holt,* 425 So.2d 820 (La. App. 5th Cir.1982), *writ denied,* 430 So.2d 94 (1983); *Carter v. Catfish Cabin,* 316 So.2d 517 (La.App.2d Cir.1975); *cf. Bartimo v. Horsemen's Benevolent & Protective Assn.,* 771 F.2d 894 (5th Cir.1985); *Manale v. City of New Orleans,* 673 F.2d 122 (5th Cir.1982). In addition to State law requirements, a plaintiff must also satisfy Federal constitutional standards as set forth by the United States Supreme Court in *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). In *Sullivan,* the Court held that where defamation of a "public official" has been alleged, then the plaintiff must prove that the defamatory statement was made with "actual malice—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* at 279–80, 84 S.Ct. at 725–26, 11 L.Ed. 2d at 706. The actual malice requirement is intended to safeguard freedom of expression on public issues as required by the First Amendment and applied to the states through the Fourteenth Amendment. This

First Amendment protection exists "against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Id.* at 270, 84 S.Ct. at 721, 11 L.Ed.2d at 701. The actual malice test "requires a plaintiff to demonstrate with clear and convincing evidence that the defendant realized that his statement was false or that he subjectively entertained serious doubt as to the truth of the statement." *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 511 n. 30, 104 S.Ct. 1949, 1965, n. 30, 80 L.Ed.2d 502, 524, n. 30 (1984).

In the companion cases *Curtis Publishing Co. v. Butts* and *Associated Press v. Walker,* 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), the Court extended application of the actual malice requirement to defamation cases involving "public figures"—those who are "intimately involved in the resolution of important public questions or, by reason of their fame, shape events in areas of concern to society at large." *Id.* at 164, 87 S.Ct. at 1996, 18 L.Ed.2d at 1116 (Warren, C.J., concurring). In *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the Court commented on the effect of applying the *New York Times* actual malice standard in defamation cases:

"This standard administers an extremely powerful antidote to the inducement to media self-censorship of the common-law rule of strict liability for libel and slander. And it exacts a correspondingly high price from the victims of defamatory falsehood. Plainly many deserving plaintiffs, including some intentionally subjected to injury, will be unable to surmount the barrier of the New York Times test. Despite this substantial abridgment of the state law right to compensation for wrongful hurt to one's reputation, the Court has concluded that the protection of the New York Times privilege should be available to publishers and broadcasters of defamatory falsehood concerning public officials and public figures. *New York Times Co. v. Sullivan, supra; Curtis Publishing Co. v. Butts, supra.*"

*Gertz, supra,* at 342–43, 94 S.Ct. at 3008–09, 41 L.Ed.2d at 807. However, in *Gertz* the Court declined to extend application of the actual malice requirement to limit defamation actions brought by private individuals. The rationale for imposing the requirement on public figures, but not on private individuals, was twofold:

"First, we recognized that public figures are less vulnerable in injury from defamatory statements because of their ability to resort to effective 'self-help.' They usually enjoy significantly greater access than private individuals to channels of effective communication, which enable them through discussion to counter criticism and expose the falsehood and fallacies of defamatory statements. 418 US, at 344, 41 LEd2d 789, 94 SCt 2997; *see, Curtis Publishing Co. v. Butts,* 388 US, at 155, 18 LEd2d 1094, 87 SCt 1975 (plurality opinion); id., at 164, 18 LEd2d 1094, 87 SCt 1975 (Warren, C.J., concurring in result). Second, and more importantly, was a normative consideration that public figures are less deserving of protection than private persons because public figures, like public officials, have 'voluntarily exposed themselves to increased risk of injury from defamatory falsehood concerning them.' 418 US, at 345, 41 LEd2d 789, 94 SCt 2997; *see, Curtis Publishing Co. v. Butts, supra,* at 164, 18 LEd2d 1094, 87 SCt 1975 (Warren, C.J., concurring in result). We identified two ways in which a person may become a public figure for purposes of the First Amendment:

'For the most part those who attain this status have assumed roles of especial prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues in-

volved.'" 418 US, at 345, 41 LEd2d 789, 94 SCt 2997.

*Wolston v. Reader's Digest Association, Inc.*, 443 U.S. 157, 164, 99 S.Ct. 2701, 2705–06, 61 L.Ed.2d 450, 458 (1979) (discussing *Gertz, supra* ).

■ Therefore, if we find that the plaintiff, Paul Tate, Jr., is either a "public official" or a "public figure" for purposes of this action, then he must prove that the defendants acted with actual malice, in addition to proving the five elements of fault required under Louisiana law. On the other hand, should we find that the plaintiff is merely a private individual in this litigation, then he need only prove the Louisiana elements of fault.

Applying the guidelines established in *Gertz* and *Curtis Publishing Co.*, we find that the plaintiff is a public figure for the limited purposes of this lawsuit arising out of a news publication on Mardi Gras and Cajun culture in Louisiana.[2] The plaintiff has assumed an active public role in promoting these specific interests. He considers himself, and is viewed by others, to be "one of the young leaders to carry on the cause of preserving the Cajun culture and heritage." Dep.Tr. of Plaintiff, p. 19–20. In the past, the plaintiff has acted as a spokesman concerning Mardi Gras and Cajun culture in Louisiana in an effort to educate the press and the public. In fact, the defendants' article was in part the result of the plaintiff's efforts. When approached by Bradley concerning the idea to provide press coverage of a Cajun Mardi Gras Celebration, the plaintiff responded with a willingness to help, and later he voluntarily consented to be interviewed by Bradley. The plaintiff recognizes that there has been public debate concerning whether Louisiana Cajuns should speak classical French or a more "commonized version" of Cajun-style French, Dep.Tr. of Plaintiff, p. 152–53; *see generally*, W. Rushton, *The Cajuns*, 289 (1979); C. Hallowell, *People of the Bayou*, 83 (1979); and that there also has been general controver-

sy among Cajuns regarding the use of the term "coonass". Some Cajuns claim that coonass has a derogatory connotation, while others use it as a term of endearment or affection when referring to themselves. Dep.Tr. of Plaintiff, p. 185–86. In his leadership capacity plaintiff has advocated for the adoption of classical French as the spoken language for Cajuns in Louisiana and has also expressed concern that the term "coonass" not be used to identify Cajuns. To a certain degree these issues have been made a part of this lawsuit by plaintiff. Plaintiff does not seriously argue the substantive accuracy of the statements published by defendants, except for his claim that defendants falsely attribute use of the term "coonass" to him during the interview; rather, plaintiff objects to the linguistic form chosen by defendants to convey the sound of his speech. The plaintiff, however, cannot deny public figure status since prior to the time the article was published, he had "thrust [himself] to the forefront of [the] particular public controversies in order to influence the resolution of the issues involved." *Gertz, supra*, at 345, 94 S.Ct. at 2997, 41 L.Ed.2d at 789. A plaintiff simply cannot choose whether or not he is to be a public figure in disregard of his actions. *Jensen v. Times Mirror Co.*, 634 F.Supp. 304, 311 (D.Conn.1986); *Rosanova v. Playboy Enterprises, Inc.*, 580 F.2d 859 (5th Cir.1978).

"[T]he status of public figure *vel non* does not depend upon the desires of an individual. The purpose served by limited protection to the publisher of comment upon a public figure would often be frustrated if the subject of publication could choose whether or not he would be a public figure. Comment upon people and activities of legitimate public concern often illuminates that which yearns for shadow. It is no answer to the assertion that one is a public figure to say, truthfully, that one doesn't choose to be. It is sufficient, as the district court found, that 'Mr. Rosanova voluntarily *engaged*

**2.** Because we find that plaintiff is a "public figure" it is not necessary for us to decide

whether he is also a "public official".

*in a course that was bound to invite attention and comment.'"*

*Id.* at 861 (quoting 411 F.Supp. 440, 445 (S.D.Ga.1976)) (emphasis added). Additionally, we feel the plaintiff enjoyed "significantly greater access than private individuals to channels of effective communication," *Gertz, supra,* at 344, 94 S.Ct. at 3009, and is more able to dispel any falsehoods regarding his expression of speech or ideas. We therefore conclude that plaintiff is a limited public figure and that defendants are entitled to the First Amendment protection accorded to publishers under *New York Times Co. v. Sullivan* and its progeny.

■ Applying the actual malice test to the facts before us, we find that there has been no clear and convincing evidence presented which would support a finding that Bradley or the Washington Post knew that the statements published were false or that they had a reckless disregard of whether the statements were false or not. Plaintiff has simply not shown any evidence of malice on the part of the defendants. Plaintiff offers three identically worded affidavits signed by individuals who have known plaintiff "well for many years" and who attest that they have never heard him speak as quoted in defendants' article and have never heard him use the term "coonass" except when discussing the term itself. Nevertheless, none of these individuals were present when plaintiff was interviewed by Bradley and their affidavits do not create a genuine issue concerning the possible presence of malice or reckless disregard of the truth.

"The First Amendment, as explicated in *Sullivan* and its progeny, instructs us that the law of libel cannot purport to punish the defamer or compensate the defamed when the allegedly libelous statements are merely false *or the product of literary license.* . . . . as the Court said in *Sullivan,* 'erroneous statement is inevitable in free debate, and . . . it must be protected if the freedoms of expression are to have the "breathing space" that they "need . . . to survive."' . . . The actual malice standard is the instrument with which the courts have strug-

gled to carve out this breathing space in a complex and litigation-saturated culture." *Bartimo, supra,* at 901 (citations omitted).

Therefore, we hold that the evidence in the record is insufficient to support a reasonable jury finding that the plaintiff has shown actual malice by clear and convincing evidence. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986); *Herbert v. Landeau,* 781 F.2d 298 (2d Cir.), *cert. denied,* 476 U.S. 1182, 106 S.Ct. 2916, 91 L.Ed.2d 545 (1986); *Rosanova v. Playboy Enterprises, Inc., supra. Cf. Levine v. CMP Publications, Inc.,* 738 F.2d 660, 675 (5th Cir.1984); *Dacey v. Florida Bar, Inc.,* 427 F.2d 1292, 1295–96 (5th Cir.1970).

"When determining if a genuine factual issue as to actual malice exists in a libel suit brought by a public figure, a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability under *New York Times.* For example, there is no genuine issue if the evidence presented in the opposing affidavits is of insufficient caliber or quantity to allow a rational finder of fact to find actual malice by clear and convincing evidence."

*Anderson, supra,* 477 U.S. at 254, 106 S.Ct. at 2513, 91 L.Ed.2d at 215.

We also hold that defendants are entitled to summary judgment due to plaintiff's failure to prove one of the necessary elements of his cause of action as required under Louisiana law. Where a defendant's statements are not "indisputably defamatory on their face"—defamatory per se—the plaintiff must prove that the defendant acted with common law malice in the sense of spite or ill will. *Makofsky v. Cunningham,* 576 F.2d 1223, 1235–36 (5th Cir.1978); *Madison v. Bolton, supra,* 102 So.2d at 438; *Carter v. Catfish Cabin, supra,* 316 So.2d at 521–22.

"Words are defamatory when, *inter alia,* they have 'tendency to deprive [a person] of the benefits of public confidence or injure him in his occupation . . . or [have] a natural tendency to injure the person's reputation.'" *Madison v. Bolton, supra,* 102 So.2d at 437. *When the words themselves have those results,*

*even without considering extrinsic facts and surrounding circumstances, they are defamatory per se. Id.,* 102 So.2d at 438.

*Makofsky, supra,* 576 F.2d at 1235–36 and n. 23 (emphasis added). Words that are defamatory *per se* "impute to the person the commission of a crime or subject him to public ridicule, ignominy or disgrace, and are susceptible of but one meaning." *Madison, supra,* 102 So.2d at 438 (footnote omitted).

 We find that the words used in defendants' article were not defamatory *per se.* The plaintiff himself agrees that the way he was quoted would not offend or defame many other Cajuns. Dep.Tr. of Plaintiff, p. 152, 280. Certainly merely attributing mention of the word "coonass" to the plaintiff does not make the article defamatory on its face. Therefore, plaintiff is required to prove that the defendants acted with common law malice. Plaintiff has presented no evidence whatsoever of common law malice in this case. Considering the pleadings, depositions, and the affidavits submitted by plaintiff, we find that there is no genuine issue concerning common law malice and accordingly defendants are entitled to summary judgment as a matter of law under Rule 56 of the Federal Rules of Civil Procedure.

It is therefore ORDERED that the Motion for Summary Judgment be GRANTED.