**Leonard COLODNY, Plaintiff,**

v.

**IVERSON, YOAKUM, PAPIANO & HATCH, a California general partnership, and John M. Garrick, individually, and as general partner of Iverson, Yoakum, Papiano & Hatch, Defendants.**

**No. 93–1464–CIV–T–17C.**

United States District Court,
M.D. Florida,
Tampa Division.

Aug. 26, 1996.

920

Sanford Lewis Bohrer, Holland & Knight, Miami, FL, Scott Owen Stigall, Charles Allen Carlson, Barnett Bolt Kirkwood & Long, Tampa, FL, for Leonard Colodny.

Steven George Schember, Charles P. Campbell, Jr., Shumaker, Loop & Kendrick, Tampa, FL, John M. Garrick, Iverson, Yoakum, Papiano & Hatch, Los Angeles, CA, for Iverson, Yoakum, & Hatch.

Alan G. Greer, Floyd, Pearson, Richman, Greer, Weil, Brumbaugh & Russomanno, P.A., Miami, FL, Stephen G. Contopulos, Bradley H. Ellis, Catherine M. Valerio Barrad, Sidley & Austin, Los Angeles, CA, for St. Martin's Press, Inc.

### ORDER

KOVACHEVICH, Chief Judge.

This cause comes before the Court on the following pending motions, responses, and related documents:

*Defendants' Motion for Summary Judgment:*

1. Defendants' Notice of Motion for Summary Judgment, and of Request for Oral Argument (Docket No. 105);

2. Defendants' Motion for Summary Judgment, Request for Oral Argument, and Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment (Docket No. 106);

3. Defendants' Statement of Material Facts to Which There is No Genuine Dispute (Docket No. 107);

4. Declaration of John W. Dean in Support of Defendants' Motion for Summary Judgment (Docket No. 108);

5. Declaration of John M. Garrick in Support of Defendants' Motion for Summary Judgment (Docket No. 109);

6. Declaration of Arnold D. Larson in Support of Defendants' Motion for Summary Judgment (Docket No. 110);

7. Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Docket No. 123);

8. Plaintiff's Notice of Filing his Affidavit in Opposition (Docket No. 124);

9. Affidavit of Plaintiff LEONARD COLODNY in Opposition (Docket No. 125);

10. Plaintiff's Notice of Filing Cases Cited in Memorandum in Opposition (Docket No. 126);

*Plaintiff's Motion for Partial Summary Judgment:*

11. Plaintiff's Motion for Partial Summary Judgment (Docket No. 111);

12. Memorandum in Support (Docket No. 112);

13. Plaintiff's Notice of Filing Documents in Support (Docket No. 113);

14. Plaintiff's Notice of Filing Deposition of John M. Garrick in Support (Docket No. 114);

15. Plaintiff's Notice of Filing Deposition of John W. Dean in Support (Docket No. 115);

16. Plaintiff's Notice of Filing his Affidavit in Support (Docket No. 116);

17. Affidavit of Plaintiff LEONARD COLODNY (Docket No. 117);

18. Plaintiff's Notice of Filing Video "Key to Watergate" in Support (Docket No. 118);

19. Plaintiff's Notice of Filing *Silent Coup: The Removal of a President* in Support (Docket No. 119);

20. Plaintiff's Notice of Transcripts of Interviews of John Dean in Support (Docket No. 121);

21. Defendants' Memorandum in Opposition (Docket No. 127);

22. Affidavit of John M. Garrick in Opposition (Docket No. 128);

*Plaintiff's Motion to Exclude Evidence:*

23. Plaintiff's Motion to Exclude Evidence Relied upon by Defendants in Summary Judgment Proceedings and Memorandum in Support (Docket No. 129);

24. Plaintiff's Certificate of Compliance (Docket No. 130);

25. Plaintiff's Notice of Filing Cases Cited in Memorandum (Docket No. 131);

26. Defendants' Memorandum in Opposition (Docket No. 134); and

27. Affidavit of John M. Garrick in Opposition (Docket No. 135).

## FACTS

Plaintiff LEONARD COLODNY ("Colodny") co-authored a book titled *Silent Coup: The Removal of a President.* This book advances a novel "theory" about Watergate. According to Colodny, it "exposes John Dean as having repeatedly lied and/or perjured himself during and after his tenure as counsel to [President Richard Nixon]." (Docket No. 3, ¶ 6). As documentation, the authors of *Silent Coup* cited hundreds of telephone interviews conducted and recorded by Colodny. Currently, John Dean (hereinafter Dean) has a pending defamation lawsuit against Colodny and others with regard to *Silent Coup* in Washington, D.C.

The instant case, however, involves Dean's lawyer, John Garrick (hereinafter Garrick). Specifically, Colodny alleges that Garrick defamed him by writing a letter to *The Tampa Tribune*, which was published in its "Commentary" section. (Docket No. 3, ¶ 7 & Exhibit 2; Docket No. 53, ¶ 6). In this letter,

Garrick stated that he and his law firm (Co-Defendant Iverson, Yoakum, Papiano & Hatch, hereinafter IYPH) are "confident that full disclosure of all the tape recordings made by Colodny will expose Colodny's book, 'Silent Coup,' as a fraud." (Docket No. 3, Exhibit 2).

Garrick wrote this letter, which is attached as Exhibit "A", in response to a two-part article in *The Tampa Tribune* written by Ray Locker (hereinafter Locker). The alleged defamatory statement (hereinafter the "fraud" statement) occurred at the end of Garrick's letter. Before the "fraud" statement, however, Garrick purported to explain several points in Locker's article that he viewed as "misstatements of fact." In particular, Garrick took issue with Locker's statement that Colodny's tape recordings provided the heart of Colodny's defamation defense and that Garrick and his firm tried to suppress the recordings. In fact, in the paragraph preceding the "fraud" statement, Garrick referred to Locker's theory on these two issues as "absolute hogwash!" (Exhibit "A"). It was in this context that Garrick made the challenged "fraud" statement.

## PROCEDURAL POSTURE

Following the publication of the "fraud" statement, Colodny sued Garrick and IYPH for defamation in Hillsborough County, Florida, Circuit Court under a one (1) count complaint (Docket No. 3). The defendants removed the case to this District Court (Docket No. 7), which has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (1994). (*See* Docket No. 3, ¶ 3; Docket No. 53, ¶ 4) (establishing no dispute as to complete diversity of citizenship). Subsequently, Garrick and IYPH answered (Docket No. 53) and discovery ceased on April 1, 1996 (Docket No. 101).

In the instant case, both parties move for summary judgment. (Docket Nos. 106, 111). In addition, Colodny moves to exclude certain evidence submitted by Garrick and IYPH in support of its motion. (Docket No. 129).

## SUMMARY JUDGMENT

### I.   The Summary Judgment Standard.

The Court will grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).   A complete discussion of the summary judgment standard can be found in *Ali v. City of Clearwater*, 915 F.Supp. 1231, 1237–38 (M.D.Fla.1996), which the Court incorporates by specific reference herein.

### II.   Defamation and a Limited Public Figure.

■   When the plaintiff is deemed to be a limited public figure, he or she "has the burden of showing by clear and convincing evidence that the defamatory statement was (1) a statement of fact, (2) which was false, and (3) made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Shiver v. Apalachee Publishing Co.*, 425 So.2d 1173, 1175 (Fla. 1st DCA 1983).

■   A limited public figure is, in essence, someone who "voluntarily place[s] themselves in a position and act[s] in a manner which invite[s] public scrutiny and comment." *Silvester v. American Broadcasting Companies*, 839 F.2d 1491, 1494 (11th Cir.1988) (*citing Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)).

■   Even though Colodny merely assumes *arguendo* that he is a limited public figure,[1] the Court concludes as a matter of law that he is one.   Colodny wrote and promoted a book about Watergate, perhaps one of the most notorious events in American history.   Colodny wrote this book voluntarily and for profit.   Finally, Colodny recognized his position in the public eye, acted on it, and responded to public scrutiny and comment through the media.   (*See, e.g.,* Docket No.

1.   (Docket No. 123, p. 5).

125, ¶ 3) (Colodny's own account of his appearance on "The Gordon Liddy Show").

Because he had "ready access to the media," Colodny had easily acquired limited public figure status at the time of the Garrick's "fraud" statement.   *Silvester*, 839 F.2d at 1494; *see also Dacey v. The Florida Bar, Inc.*, 427 F.2d 1292, 1293–95 (5th Cir.1970) (deeming the author of *How to Avoid Probate* to be a public figure because, by writing the book and appearing on radio and television to promote it, he "thrust[ed] his personality into the 'vortex' of an important public controversy").   He was clearly "involved in an actual public controversy," Watergate, and participated sufficiently in that controversy "to gain him general fame or notoriety in the community."   *Smith v. Taylor County Publishing Company*, 443 So.2d 1042, 1049 (Fla. 1st DCA 1983).   Therefore, *New York Times Co. v. Sullivan*, 376 U.S. 254, 272, 84 S.Ct. 710, 721–22, 11 L.Ed.2d 686 (1964), and its First Amendment/actual malice progeny applies to Colodny's cause of action; discussed *infra*.

### III.   Defamatory Statement.

■   "Under Florida law, words are defamatory when they charge a person with an infamous crime or tend to subject one to hatred, distrust, ridicule, contempt or disgrace or tend to injure one in one's business or profession."   *Seropian v. Forman*, 652 So.2d 490, 495 (Fla. 4th DCA 1995); *accord Keller v. Miami Herald Publishing Co.*, 778 F.2d 711, 716 (11th Cir.1985).

■   This Court concludes, as a matter of law, that Garrick's "fraud" statement is not defamatory.   First, Garrick's words do not charge Colodny with any infamous crime.   Rather, it is Colodny's *book* that is associated with the word "fraud."   Although Garrick refers to Colodny's allegedly unlawful voice recordings, those factual assertions are in no way related to the crime of fraud.

Second, Garrick's "fraud" statement does not tend to subject Colodny to hatred, distrust, ridicule, contempt, or disgrace.   At the time of Garrick's letter, the label "fraud" was nothing new to Colodny or *Silent Coup*.   Pri-

or to Garrick's letter, Colodny defended his book on "The Gordon Liddy Show" against critics who deemed it a "fraud." (Docket No. 125, Exhibit A). The Court fails to see how Garrick's letter to the editor could tend to subject Colodny to hatred, distrust, etc., after Colodny himself, through a much broader medium, publicly acknowledged the fact that people have called *Silent Coup* a fraud.

Finally, Garrick's "fraud" statement did not tend to injure Colodny's business or profession. Colodny had to know that *Silent Coup* would buck the mainstream and, thus, generate criticism. For better or for worse, it is a common notion that negative publicity is often "good" publicity. Indeed, Colodny does not present any record evidence before this Court that the sales of *Silent Coup* suffered as a result of published words such as Garrick's. Therefore, in context, Garrick's "fraud" statement is not defamatory. *See Greenbelt Cooperative Publishing Association v. Bresler*, 398 U.S. 6, 14, 90 S.Ct. 1537, 1542, 26 L.Ed.2d 6 (1970) (concluding that the word "blackmail" in context was not defamatory); *Seropian*, 652 So.2d at 498 (concluding that the words "influence peddling" in context were not defamatory).

*IV. Falsity.*

█ Just like the other elements, the element of "falsity" is an essential part of the plaintiff's *prima facie case* of defamation. *Axelrod v. Califano*, 357 So.2d 1048, 1050 (1st DCA 1978). Accordingly, at trial, Colodny will have to prove that *Silent Coup* is not, in fact, a fraud. In the instant case, Colodny places this Court in a very precarious position with regard to this element in that it is inextricably intertwined with Dean's pending lawsuit against Colodny.

█ Therefore, for purposes of this Order only, the Court concludes that both parties have failed to meet their summary judgment burdens with regard to "falsity." Garrick has failed to point out the absence of evidence to support Colodny's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Similarly, with regard to his motion for partial summary judgment, Colodny has failed to show that "no reasonable jury could find"

that *Silent Coup* is not a fraud. *United States v. Four Parcels of Real Property in Greene and Tuscaloosa Counties*, 941 F.2d 1428, 1438 (11th Cir.1991) (citations omitted).

*V. Fact v. Opinion.*

█ It is well established that a "pure expression of opinion is constitutionally protected." *E.g., Smith v. Taylor County Publishing Company*, 443 So.2d 1042, 1049 (Fla. 1st DCA 1983). As such, whether the alleged defamatory word is an non-actionable expression of pure opinion or an actionable expression of pure fact or mixed opinion and fact is a question of law for the Court. *Florida Medical Center, Inc., v. New York Post Co., Inc.*, 568 So.2d 454, 457 (Fla. 4th DCA 1990), *rev. denied*, 581 So.2d 1309 (Fla.1991); *From v. Tallahassee Democrat, Inc.*, 400 So.2d 52, 57 (Fla. 1st DCA 1981), *rev. denied*, 412 So.2d 465 (Fla.1982). Florida case law provides that "[p]ure opinion occurs when the defendant makes a comment or opinion based on facts which are set forth in the article or which are otherwise known or available to the reader or listener as a member of the public." *From*, 400 So.2d at 57 (citing *Restatement (Second) of Torts*, § 566, pp. 171–72).

█ In deciding whether the expression is a fact or an opinion, the Court must:

[E]xamine the statement in its totality and the context in which it was uttered or published. The court must consider all the words used, not merely a particular phrase or sentence. In addition, the court must give weight to cautionary terms used by the person publishing the statement. Finally, the court must consider all the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published.

*Id.* (citing *Information Control v. Genesis One Computer Corp.*, 611 F.2d 781, 784 (9th Cir.1980)).

█ After due consideration of its context, cautionary terms, medium, and audience, this Court concludes that Garrick's "fraud" statement is an expression of pure opinion and, thus, not actionable by Colodny.

First, the "fraud" statement's context unambiguously reveals that it is an opinion. Garrick addressed his letter to Locker and the Assistant Managing Editor of *The Tampa Tribune*. In the letter, Garrick factually responds to what he perceived as misstatements of fact in the newspaper's two-part article regarding himself, his firm, and his client. The *Tribune* published his letter in its "Commentary" section, tantamount to a letter to the editor.

The context of Garrick's "fraud" statement is substantially similar to the context of a defamatory statement in *Hay v. Independent Newspapers, Inc.*, 450 So.2d 293 (Fla. 2d DCA 1984). In *Hay*, someone wrote a letter to the editor that was published in a section of the newspaper titled "The Forum, Opinion." *Id.* at 295. In the letter, the author complained about the state attorney's decision not to prosecute the plaintiff. *Id.* at 294. Specifically, the author stated that the decision "makes me sick! Catch a crook, pat him on the back and let him go free.... [judges and lawyers] twist the laws so the crooks can go free." *Id.* The plaintiff then sued the newspaper publisher and editor for libel. *Id.*

The *Hay* court held that the expression was one of pure opinion and, thus, not actionable. *Id.* at 295. The court emphasized the context of the "crook" statements in that they appeared in the letter to the editor section of the newspaper. *Id.* The *Hay* court also reasoned that the statements "were based in part upon facts disclosed in the article, but the fact that criminal charges had been filed against [the plaintiff] was either known or readily available to the reader as a member of the public." *Id.* Finally, the court stressed how the statements were "directed not toward [the plaintiff], but toward the judicial system." *Id.*

Garrick's "fraud" statement is no less an expression of pure opinion than the "crook" statements in *Hay*. Both were published as a letter to the editor. Like the "crook" statement, Garrick's "fraud" statement relies upon several paragraphs of detailed, disclosed factual assertions. Garrick's "fraud" statement also refers to his client's defamation lawsuit against Colodny, which is a "readily available" matter of public record

just as the *Hay* plaintiff's criminal charge was. Finally, just as the "crook" statement was directed at the judicial system and not the plaintiff, Garrick's "fraud" statement was directed at Colodny's book and Locker's article, not Colodny himself. Indeed, the "fraud" statement is proximately linked with Garrick's hyperbolic reaction to Locker's theory that Colodny's tapes validate *Silent Coup*: "absolute hogwash!" Therefore, in context, the "fraud" statement is an expression that "cannot reasonably be interpreted as stating actual facts" about Colodny. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19, 110 S.Ct. 2695, 2706, 111 L.Ed.2d 1 (1990); *see also Phantom Touring, Inc., v. Affiliated Publications*, 953 F.2d 724, 727 (1st Cir.) (deeming the expression "a rip-off, a fraud, a scandal, a snake-oil job" as a "figurative and hyperbolic" commentary of pure opinion), *cert. denied,* 504 U.S. 974, 112 S.Ct. 2942, 119 L.Ed.2d 567 (1992).

Second, the "fraud" statement is properly deemed an expression of pure opinion because Garrick sufficiently cautions it as such. Indeed, rather than an outright proclamation, Garrick merely stated that he was "confident" that full disclosure of Colodny's recorded interviews would reveal *Silent Coup* as a fraud. This commentary was clearly an expression of his legal theory of Dean's pending defamation suit against Colodny. It is only natural that Garrick, Dean's lawyer, would conclude his response to Locker's article with his theory of the case.

Finally, other circumstances with regard to the "fraud" statement lead this Court to conclude that it is an expression of pure opinion. As noted *supra,* the "fraud" statement appeared in a medium that invites opinion, in that it was a letter to the editor and published in *The Tampa Tribune*'s "Commentary" section. The *Tribune* no doubt published the letter because many readers of Locker's article about Garrick and his firm would want to see their reaction to it.

Although not binding precedent, the case of *Henry v. Halliburton,* 690 S.W.2d 775 (Mo.1985) (en banc), greatly persuades the Court that the other circumstances surrounding the "fraud" statement indicate that it is one of pure opinion. In *Henry,* some cus-

tomers requested an article from an insurance agent. *Id.* at 778. These customers were apparently told that this article, which appeared in the defendant's presidential message in "Life Notes," a publication of Life Underwriter's Association of St. Louis, Inc., would confirm that the plaintiff was a "crook." *Id.* The article alleged that "a certain insurance agent and general agent had acted with 'greed' for the purpose of 'fleecing a consumer for their [the agent's] own personal gain,' and that said general agent was a *fraud* and a twister." *Id.* (emphasis added). The plaintiff later sued the defendant for libel.

After an extensive and accurate review of the law of defamation, the Supreme Court of Missouri, sitting *en banc,* held that the defendant's statements were non-actionable expressions of opinion. *Id.* at 790. Highly instructive with regard to the instance case, the *Henry* court stated:

> The words relied on most heavily by appellants are the words "fraud" and "twister." Unless it can be established that by the use of the words "fraud" or "twister" respondent was accusing appellants of having committed a specific crime, then the use of these words would be too imprecise, undefinable and no more actionable that [sic] the words "with greed" "to fleece a consumer."
>
> \*      \*      \*      \*      \*      \*
>
> Considering these words in light of all relevant circumstances, we believe that.... [the defendant] is not charging the commission of any specific crime, and "broad, unfocused, wholly subjective comment[s]" that do not suggest to the ordinary reader that the plaintiff committed a crime are not actionable.

690 S.W.2d at 789–90 (internal citations omitted).

Just as the *Henry* court believed that the word "fraud" was too imprecise, undefinable, and non-actionable, so does this Court. Furthermore, as discussed *supra,* Garrick's words do not suggest to the ordinary reader that Colodny committed a crime. Therefore, the totality of the circumstances surrounding the "fraud" statement clearly lead this Court

to conclude that it was an expression of non-actionable, pure opinion.

## VI. *Actual Malice.*

Because Colodny · is a limited public figure, his defamation suit is subject to First Amendment limitations. *Harte–Hanks Communications, Inc., v. Connaughton,* 491 U.S. 657, 666, 109 S.Ct. 2678, 2685, 105 L.Ed.2d 562 (1989) (stating that "[t]oday, there is no question that public figure libel cases are controlled by the New York Times standard and not by the professional standards rule"). Therefore, at trial, Colodny must prove that Garrick made the "fraud" statement with "actual malice." *Shiver v. Apalachee Publishing Co.,* 425 So.2d 1173, 1175 (Fla. 1st DCA 1983). Indeed, in order to prevail at trial, Colodny must prove all the elements of defamation by clear and convincing evidence. *Id.*

A defendant acts with "actual malice" if he or she makes the challenged statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964). A defendant acts with "reckless disregard" if he or she "in fact entertain[s] serious doubts as to the truth of [the] publication," *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968), and "with a high degree of awareness of the probable falsity of the statements involved." *Cape Publications, Inc., v. Adams,* 336 So.2d 1197, 1200 (4th DCA 1976), *rev. denied,* 348 So.2d 945 (Fla.), *cert. denied,* 434 U.S. 943, 98 S.Ct. 440, 54 L.Ed.2d 305 (1977).

For purposes of summary judgment, this Court must determine "whether the evidence presented [by Colodny] is such that a reasonable jury might find that actual malice had been shown with convincing clarity." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2515, 91 L.Ed.2d 202 (1986). In the instant case, the Court concludes that, as a matter of law, no reasonable jury could find that Garrick acted with actual malice when writing the "fraud" statement.

Both in opposition to the defendants' motion for summary judgment, and in support of his own, Colodny primarily relies on certain portions of Garrick's deposition (Docket No. 114) and declaration (Docket No. 109), Dean's declaration (Docket No. 108), Colodny's affidavit (Docket No. 116), and the defendants' answers to interrogatories. (*See* Docket Nos. 123, pp. 10–16; 112, pp. 14–17). Colodny argues that this evidence establishes that "Garrick relied upon only 'one or two minutes' of a single interview tape before making the libelous statement. Further, the undisputed record shows that Garrick had access to more interview tapes, but failed to listen to them, relying instead on John Dean, defendants' client in legal battles with Colodny and *Silent Coup.*" In response, Garrick and IYPH assert that, through Garrick's declaration (Docket No. 109),[2] they "have provided uncontroverted evidence of their subjective belief that full disclosure of all the tapes would expose *Silent Coup* as a fraud."

Even if the Court assumes the truth of Colodny's argument, i.e. that Garrick listened to only "one or two minutes" of the accessible tapes and primarily relied upon his client's word, such record evidence is insufficient to support an inference of actual malice. While it is true that a public figure often "must rely upon circumstantial evidence to prove his case," it "is well established that evidence that a publisher failed to investigate prior to publication does not, by itself, prove actual malice." *Hunt v. Liberty Lobby,* 720 F.2d 631, 634 (11th Cir.1983). Therefore, Colodny's bare assertion that Garrick's investigation was "grossly inadequate" under the circumstances is without merit. Indeed, Garrick asserts no less than thirteen (13) corroborative sources that he knew of at the time of his "fraud" statement. (Docket Nos. 109; 127, pp. 11–13).

There is no more record evidence of actual malice in this case than there was in *Meisler v. Gannett Company,* 12 F.3d 1026 (11th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 2712, 129 L.Ed.2d 838 (1994). In *Meisler,* a news reporter published a false statement without verification. *Id.* at 1028. He had read only one (1) article from the associated press, which began with the caption "URGENT" and ended with the notation "MORE." *Id.* at 1029–30. In fact, he failed to read the article's supplement that was faxed one-half (½) hour later and which corrected an error in the earlier report. *Id.* No where in the opinion is there any indication that the reporter alleged that the story was "hot" or otherwise required immediate dispatch. Nevertheless, the *Meisler* court held that "no reasonable jury could find actual malice by clear and convincing evidence," and affirmed the district court's granting summary judgment. *Id.* at 1030.

Just as no reasonable jury could have found actual malice by clear and convincing evidence in *Meisler,* no reasonable jury could find actual malice in the instant case. Indeed, Garrick's investigation was certainly no less cursory than the *Meisler* reporter's. Both the *Meisler* defendant and Garrick had access to more information. Like the *Meisler* record, the record in this case supports an inference of negligence at best, which is "not the appropriate standard for proving actual malice." *Id.*

Furthermore, the fact that Garrick relied on his client for much of the information does not raise a genuine issue of material fact with respect to actual malice. Colodny's assertion that Dean is inherently unreliable is of little surprise in light of the contents of *Silent Coup* and Dean's pending defamation suit against Colodny. However, this Court finds it wholly disingenuous on the part of Colodny to now assert that Garrick inadequately investigated his client's position that *Silent Coup* is a fraud. Certainly, if Colodny truly believed that Garrick's investigation was "grossly inadequate," he would have moved for sanctions under the "reasonable inquiry" prong of Fed.R.Civ.P. 11 in the Dean lawsuit.

Therefore, after due consideration of the parties' record evidence, arguments, and case law analogies, this Court concludes that Colodny fails to raise a genuine issue of material fact with respect to actual malice.

2. Garrick's declaration is tantamount to an affidavit for purposes of summary judgment. 28 U.S.C. § 1746 (1994).

## VII. Fair Comment.

The final ground for granting summary judgment in favor of Garrick and IYPG involves the doctrine of fair comment. As handed down from the courts of England, the law of libel "recognizes fair comment as a complete defense to a charge of a libelous publication." *Guitar v. Westinghouse Electric Corp.*, 396 F.Supp. 1042, 1047 & n. 4 (S.D.N.Y.1975) (citing *Carr v. Hood*, 1 Campb. 354, 357 (1808)), *aff'd*, 538 F.2d 309 (2d Cir.1976). In Florida, this doctrine is akin to a qualified privilege. *From v. Tallahassee Democrat, Inc.*, 400 So.2d 52, 54 (Fla. 1st DCA 1981), *rev. denied*, 412 So.2d 465 (Fla.1982). This doctrine allows an interested person to make a "fair comment" on a public matter relating to an individual who has voluntarily made himself newsworthy. *Gibson v. Maloney*, 231 So.2d 823, 836 (Fla.), *cert. denied*, 398 U.S. 951, 90 S.Ct. 1871, 26 L.Ed.2d 291 (1970).

The Court concludes, as a matter of law, that the doctrine of fair comment bars Colodny from recovering for defamation. Garrick certainly "had an interest in defending" against the contents of Locker's article, and Colodny's statements therein, both as Dean's lawyer and as the subject of Locker's article. *See Abram v. Odham*, 89 So.2d 334 (Fla.1956). Furthermore, Garrick's "fraud" statement constitutes a fair comment for the same reasons that it constitutes an expression of pure opinion regarding a limited public figure; the Court incorporates said sections of this Order by specific reference.

Overall, Colodny's defamation claim patently deserves summary disposition in light of the Court's conclusions *supra*. By granting the defendants' motion for summary judgment, this Court is in no way invading the province of the jury. Rather, the Court is upholding its duty to prevent "a forbidden intrusion on the field of free expression." *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 499, 104 S.Ct. 1949, 1958, 80 L.Ed.2d 502 (1984). Accordingly, it is

**ORDERED** that Defendants' Motion for Summary Judgment (Docket No. 106) be **GRANTED;** Defendants' Request for Oral Argument (Docket No. 105) be **DENIED;** Plaintiff's Motion for Partial Summary Judgment (Docket No. 111) be **DENIED** as without merit in light of the Court's decision to grant the defendants' motion; Plaintiff's Motion to Exclude Evidence (Docket No. 129) be **DENIED** as without merit and because the evidence sought to be excluded was in no way dispositive of this Court's Order; and the Clerk of Court shall **ENTER** final judgment in favor of Defendants and **DISMISS** this cause of action.

**DONE AND ORDERED.**

928

# LETTER$

## Law firm was not in 'cahoots'

The Ray Locker "Palm Tree Politics" columns dated April 19 and 20 contain several misstatements of fact concerning this firm in connection with John and Maureen Dean's civil action against Len Colodny and others. (This law firm does not represent Dean in connection with the State of Florida's pending criminal investigation of Colodny.)

In his April 19 column, Locker states that "court documents detail a close relationship" between this firm and former Hillsborough County Assistant State Attorney Judy Hoyer; that Hoyer "gave [John] Dean's lawyers a list of people Colodny interviewed"; that after Colodny's civil suit lawyers subpoenaed Hoyer for a deposition, "Hoyer called the folks at Iverson, Yoakum, Papiano & Hatch, Dean's lawyers, for help" and that this firm "immediately jumped into action."

Locker's April 20 column parrots his earlier claim that Hoyer "received help from Dean's libel-suit lawyers in fighting" Colodny's subpoena. According to Locker, this supposed chain of events shows that Hoyer was "in cahoots" with this firm. All of these statements are false.

The facts are that Colodny's lawyers failed to give this firm sufficient advance notice of Judy Hoyer's deposition date as required by the Federal Rules of Civil Procedure.

Furthermore, the date set for the deposition and the necessary travel time involved conflicted with previously calendared commitments made by the attorneys in our office who are principally involved in the suit.

We therefore exercised our right to object to the deposition going forward on the date scheduled. Hoyer did not telephone us. We telephoned her to inquire whether she had been subpoenaed to appear for deposition on the date set in the notice and to advise her that we were going to object to the deposition going forward on that date and would seek to have it either quashed or rescheduled because we had not received adequate notice.

She then informed us that the date given in the subpoena was not convenient to her either, but at no time did she request any help from us in opposing the deposition. This office's brief conversation with Hoyer was thus precipitated by the actions of Len Colodny and his counsel. Prior to our placing that telephone call, no one at this office had ever spoken or corresponded with Hoyer.

To preserve our objection, and in compliance with the Federal Rules of Civil Procedure, we prepared and served Colodny's counsel with our motion. I assume these papers are the "court documents" to which Locker refers.

Locker should be advised that as counsel for a party to a lawsuit, we are entitled to proper notice of any deposition taken in connection with the case. Locker finds it extraordinary that we would request that Hoyer's depositions be taken in accordance with the rules, but we doubt anyone would feel that way if the facts were accurately reported.

In apparent recognition that the original deposition notice did not comply with the requirements of federal procedure, Colodny's lawyer voluntarily rescheduled the deposition for a later date. The deposition then went forward as scheduled.

As for Locker's statement (in several columns) that Colodny's unlawful tape recordings "provide the heart of Colodny's defense" and that this firm is trying to suppress these tapes: absolute hogwash!

To the contrary, we are confident that full disclosure of all the tape recordings made by Colodny will expose Colodny's book, "Silent Coup," as a fraud.

— JOHN M. GARRICK
Los Angeles
*The writer is with the California law firm of Iverson, Yoakum, Papiano & Hatch.*

*The Tampa Tribune-Times, Sunday, May 16, 1*